UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| JAMES TAULBEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 6:21-CV-143-REW-HAI |
| v. | ) | |
| | ) | |
| BELL COUNTY SHERIFF'S | ) | OPINION & ORDER |
| DEPARTMENT, | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

This discrimination case arises from James Taulbee's employment with the Bell County Sheriff's Department ("BCSD"). *See* DE 1-1 ¶¶ 6-82 (Verified Complaint). Taulbee originally filed his complaint in Bell County Circuit Court. *See* DE 1 at 1 (Notice of Removal). BCSD, citing a federal question, removed the case to the Eastern District of Kentucky. *See id.* The following day, BCSD moved to dismiss under Rule 12(b)(6). *See* DE 3 (Motion to Dismiss). Taulbee responded. *See* DE 13 (Response). BCSD did not reply. The matter is ripe for review.

## I. Facts[1]

Taulbee, a former National Guard Staff Sergeant, initially joined BCSD as a deputy sheriff in 2012, upon returning from active duty in Iraq. *See* DE 1-1 ¶ 9 (Complaint). Taulbee only worked for BCSD for one year before briefly leaving to work at Appalachian Challenge Academy and

---

[1] The Court, as it must under Rule 12, gleans the facts from the allegations in Taulbee's Complaint. *See generally* DE 1-1 (Verified Complaint).

later the Pineville Police Department. *See id.* ¶¶ 10-12. However, he returned to BCSD in 2016. *See id.* ¶ 15.

Upon returning to BCSD, Taulbee worked as a K-9 deputy until his K-9 partner died tragically in December 2017. *See id.* ¶¶ 16-17. That same month, Taulbee suffered a PTSD-triggering event while executing a search; a suspect fired his shotgun at Taulbee, lodging pellets in his toboggan and leading to a brief standoff. *See id.* ¶¶ 21-24. Immediately following this encounter, Taulbee began suffering paranoia, anxiety, mood swings, and war flashbacks—leading to social isolation and emotional volatility during the course of even a single work shift. *See id.* ¶¶ 25-28. Taulbee had received a prescription from his civilian doctor for medications to control his PTSD symptoms. *See id.* ¶ 29. However, these drugs' positive effects "no longer worked" following the December 2017 encounter. *See id.* ¶ 30.

In early 2019, Sheriff Williams and Chief Deputy Gary Lambdin reprimanded Williams for "outbursts at work." *See id.* ¶ 31. Taulbee correlates the outbursts directly to his PTSD. *See id.* ¶ 32. They met with Taulbee to discuss his "unbecoming" conduct, recognizing that his behavior was not normal. *See id.* ¶¶ 33-34. Taulbee then described his PTSD symptoms—including heightened anxiety and difficulty concentrating—to both Sheriff Williams and Chief Deputy Lambdin. *See id.* ¶¶ 35-36. Taulbee described it "as his mind not working right." *Id.* ¶ 35. Chief Deputy Lambdin recommended that Taulbee see a medical professional. *See id.* ¶ 36. Williams offered to assist with medication costs. *See id.* ¶ 37.

Later, in February 2019, Sergeant Jordan suddenly and unilaterally reassigned Taulbee from the night shift to the day shift. *See id.* ¶ 38. Taulbee, upset by the change, told Sergeant Jordan that he needed to work nights so that he could care for his children during the day. *See id.* ¶ 40. But Sergeant Jordan refused to revert Taulbee's schedule back to night shifts. *See id.* ¶ 41. Sergeant

Jordan also had altered Taulbee's days off—swapping Taulbee's days off with those of a junior deputy. *See id.* ¶ 44. Taulbee expressed his concerns in the BCSD text message group; in response, Sheriff Williams mocked and ridiculed Taulbee in the message group, leading Taulbee to quit. *See id.* ¶ 47.

After he quit, Sheriff Williams talked Taulbee into rescinding his termination. *See id.* ¶ 48. But Sheriff Williams required that Taulbee serve a one-week suspension before returning to work due to his "outbursts." *See id.* After serving his suspension, Taulbee sought help from the Veterans Affairs (VA) medical center and was diagnosed with "'PTSD- chronic following military combat' and an unspecified mood disorder." *See id.* ¶ 52.

In June 2019, Taulbee responded to a call claiming a man was shooting at his neighbor. *See id.* ¶ 55. When Taulbee arrived, the man lit his house on fire and began shooting at officers— Taulbee took cover and exchanged gunfire with the suspect. *See id.* ¶¶ 55-57. The Kentucky State Police eventually arrived and apprehended the suspect after a six-hour standoff. *See id.* ¶ 58. Sheriff Williams arrived on the scene and Taulbee asked if he could take time off from work due to the triggering incident. *See id.* ¶ 60. Sheriff Williams declined despite knowing of Taulbee's medical conditions and knowing Taulbee was receiving treatment from the VA. *See id.* ¶ 61. Taulbee's PTSD symptoms kicked-in, worsening to include nightmares, hypervigilance, and irritability with "frequent outbursts." *See id.* ¶¶ 65-67 The VA then diagnosed him with "PTSD, panic disorder, and depressive order unspecified." *See id.* ¶ 68.

Following the second shooting encounter, Taulbee's supervisor, Sergeant Jordan, "stopped communicating directly with [Taulbee]" and instead "sen[t] other sheriff deputies to assign [Taulbee] work"—even though "Sergeant Jordan did not communicate with any of the other deputies in this manner." *See id.* ¶ 69. Taulbee was also reassigned to drive prisoner transports—

a task typically assigned to the least-senior sheriff's deputy, not Taulbee. *See id.* ¶ 70. Additionally, when Taulbee finally took a leave of absence in July 2019, Sergeant Jordan rummaged through Taulbee's locker, dropping or disordering paperwork and files in the process. *See id.* ¶ 71. This led to Taulbee missing a meeting with a prosecutor. *See id.* ¶ 72. Based on these facts, Taulbee claims BCSD constructively discharged him, by a refusal to accommodate and retaliatory acts, on August 1, 2019. *See id.* ¶ 73.

## II. Standard of Review

The Court typically assesses motions to dismiss under the *Iqbal* and *Twombly* plausibility standard, whereby the Court must grant a Rule 12(b)(6) motion to dismiss if a complaint fails to present "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); (quoting *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). Further, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

The Supreme Court has addressed pleadings in employment cases with some precision. In *Swierkiewicz*, the Supreme Court established that the ordinary rules for testing a complaint apply to employment discrimination claims. *See Swierkiewicz v. Sorema*, 122 S. Ct. 992, 997 (2002). Therefore, "'it is not appropriate to require a plaintiff to plead facts establishing a prima facie case [under *McDonnell Douglas*] because the *McDonnell Douglas* framework does not apply in every employment discrimination case.'" *Keys v. Humana, Inc.*, 684 F.3d 605, 609 (6th Cir. 2012) (quoting *Swierkiewicz,* 122 S. Ct. at 997).[2] As such, in the Sixth Circuit "it is error for the district

---

[2] "[T]he Sixth Circuit has recognized that *Swierkiewicz* was unaltered by the Supreme Court decisions in *Twombly* and *Iqbal*." *Bargo v. Goodwill Indus. of Kentucky, Inc.*, 969 F. Supp. 2d 819, 823 (E.D. Ky. 2013) (citing *Keys*, 684 F.3d at 609).

court to require [the plaintiff] to plead a prima facie case . . . in order to survive a motion to dismiss."[3] *Id.*; *see also Roof v. Bel Brands USA, Inc.*, 641 F. App'x 492, 497 (6th Cir. 2016). Rather, "the ordinary rules of notice pleading apply" and a complaint survives a motion to dismiss so long as it gives "'fair notice' of the basis of the plaintiff's claims." *Keys*, 684 F.3d at 609; *see also Rhodes v. R & L Carriers, Inc*., 491 F. App'x 579, 583-84 (6th Cir. 2012) (citation omitted: "If a reasonable court can draw the necessary inference from the factual material stated in the complaint, the plausibility standard has been satisfied.").

It is well established that the *McDonnell Douglas* burden-shifting framework applies to FMLA retaliation claims. *See, e.g.*, *Marshall v. Rawlings Co. LLC*, 854 F.3d 368, 379 (6th Cir. 2017). The *McDonnell Douglas* framework similarly applies to claims brought under the KCRA. *See, e.g.*, *Bd. of Regents v. Weickgenannt*, 485 S.W.3d 299, 310 (Ky. 2016). Therefore, by extension, *Swierkiewicz* also applies to both claims, requiring here only that Taulbee plead "an adequate factual basis" for discrimination to satisfy the pleading requirements under Rule 8(a)(2) and survive BCSD's motion to dismiss. *See Serrano v. Cintas Corp.*, 699 F.3d 884, 897 (6th Cir. 2012).[4]

To resolve BCSD's 12(b)(6) motion to dismiss, the Court may consider the allegations in the Complaint alongside "matters of public record, orders, items appearing in the record of the

---

[3] BCSD seeks to shirk the Supreme Court's altered pleading standard in *Swierkiewicz,* claiming that Taulbee must establish every element of his claim. *See* DE 3 at 6-7 (relying on *Spivey v. B.F. Goodrich Co.*, 246 F. Supp. 2d 714, 717-18 (W.D. Ky. 2003), a case decided on a motion for *summary judgment*, not a motion to dismiss). Although Taulbee would face a higher bar at summary judgment, a heightened evidentiary standard does not control motions to dismiss. *See Swierkiewicz*, 122 S. Ct. at 998.
[4] In *Swierkiewicz* and *Keys*, the plaintiff pleaded sufficient facts to survive a motion to dismiss by pleading "membership in the protected class, specific adverse employment actions taken against them, and instances in which they were treated less favorably than identified non-class members." *James v. Hampton*, 592 F. App'x 449, 461 (6th Cir. 2015).

case, and exhibits attached to the [C]omplaint." *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001) (quoting *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997)). Here, the Court finds that Taulbee has alleged sufficient factual matter to plausibly support his discrimination claims. The Complaint gives fair notice of his claims' factual bases, which are adequate. Accordingly, the Court **DENIES** DE 3.

### III. Analysis

Taulbee brings two claims: (1) that BCSD discriminated against him under KRS § 344.040, and (2) that BCSD violated the FMLA when it failed to grant him leave to accommodate his PTSD. *See* DE 1-1 ¶¶ 74-90 (Complaint); *see also* DE 13. The Court addresses each claim in turn.

#### (a) Disability Discrimination (Count I)

Taulbee brings two theories of liability under his overarching disability discrimination claim. First, Taulbee claims that BCSD failed to reasonably accommodate his disability. *See* DE 1-1 ¶¶ 74-82. Second, Taulbee claims that BCSD constructively discharged him, because of his disability, by making his working conditions intolerable. *See id.* ¶¶ 83-90.

#### 1. Disability Discrimination – Failure to Accommodate

Taulbee's failure to accommodate claim implicates two elements. *See Kleiber v. Honda of Am. Mfg.*, 485 F.3d 862, 868 (6th Cir. 2007).[5] Taulbee need not *prove* these elements in his Complaint to survive a motion to dismiss. The Court finds that—at this stage—Taulbee's Complaint plausibly supports each element: (1) Taulbee is disabled, and (2) Taulbee was otherwise

---

[5] Although *Kleiber* involves an Americans with Disabilities Act claim, the "language of the Kentucky Civil Rights Act (KCRA), Ky. Rev. Stat. Ann. § 344.010, *et seq.*, mirrors the language of the Americans with Disabilities Act (ADA), 42 U.S.C.S. § 12101 *et seq.*, and the analysis under the ADA applies with equal force to the claim brought pursuant to the KCRA." *Law v. City of Scottsville*, 221 F.3d 1335 (6th Cir. 2000) (citing *Brohm v. Jh Props.*, 149 F.3d 517, 519 (6th Cir. 1998)).

qualified for his position despite his disability, with a proposed reasonable accommodation.[6] *See Fisher v. Nissan N. Am., Inc.*, 951 F.3d 409, 417 (6th Cir. 2020).

Under the second element, Taulbee must show that he requested a reasonable accommodation that BCSD denied. *See Burns v. Coca-Cola Enterprises, Inc.*, 222 F.3d 247, 258-59 (6th Cir. 2000); *Jubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 2020 (6th Cir. 2010). But such a request need not include "magic words" signifying his disability, the law under which Taulbee requested an accommodation, or even the word "accommodation" itself. *Smith v. Henderson*, 376 F.3d 529, 535 (6th Cir. 2004); *see also Leeds v. Potter*, 249 F. App'x 442, 449 (6th Cir. 2007) ("[T]his Court has held that an employee need not use the magic words 'accommodation' or even 'disability[.]'"). Rather, Taulbee's request only must have connected the overture to his existing medical condition. *See id.*

Here, BCSD presents a winding argument claiming Taulbee has not alleged facts to support alleged disability and has not described any reasonable accommodation proposed to BCSD.[7] *See* DE 3 at 5-6. The defense sets too high a bar, under the cases. Taulbee's Complaint satisfies the Rule 12 standard, sufficiently pleading that he suffered disability discrimination under KRS Chapter 344.

First, Taulbee plausibly pleaded that he is disabled. KRS § 344.010 defines disability, in relevant part, as "[a] physical or mental impairment that substantially limits one (1) or more of the

---

[6] Taulbee may prove this second element in three different ways—by demonstrating he was otherwise qualified for his position despite his disability (a) without accommodation from his employer, (b) with an alleged "essential" job requirement eliminated, or (c) with a proposed reasonable accommodation. *See Fisher*, 951 F.3d at 417. However, Taulbee only seeks to prove the second element under track (c). *See* DE 1-1 ¶¶ 60-61.

[7] BCSD also attacks a phantom retaliation claim. *See* DE 3 at 6. Because Taulbee does not purport to pursue a separate retaliation claim, *see* DE 13 at 5, the Court skips the argument. *See* DE 1-1 ¶¶ 74-90.

major life activities of the individual." And "so long as the complaint notifies the defendant of the claimed impairment, the substantially limited major life activity need not be specifically identified in the pleading." *Equal Employment Opportunity Comm'n v. J.H. Routh Packing Co.*, 246 F.3d 850, 854 (6th Cir. 2001). Courts have previously recognized "interacting with others" and "concentrating" as major life activities. *See, e.g.*, *MX Grp., Inc. v. City of Covington*, 293 F. 3d 326, 337 (6th Cir. 2002) (recognizing "interacting with others" as a major life activity); *Miller v. Hardin*, No. 09-cv-09-JMH, 2010 WL 1451352, at *8 (E.D. Ky. Apr. 9, 2010) (acknowledging that "concentrating" can be considered a major life activity). Here, Taulbee alleged in his Complaint that PTSD inhibited his ability to interact with others, his concentration, and resulted in mood swings and lack of emotional control. *See* DE 1-1 ¶¶ 25-28. He linked PTSD to "his mind not working right." *Id.* ¶ 35. Taulbee therefore sufficiently pleaded that he had a disability.[8] BCSD's argument lacks merit, in context.

Second, BCSD challenges that Taulbee "failed to allege that he was qualified for his position" and "fail[ed] to assert or describe any requested reasonable accommodation." *See* DE 3 at 5-7. Although "case law establishes no bright-line test for when the form of an employee's request is sufficiently clear to constitute a request for accommodation," *Judge v. Landscape Forms, Inc.*, 592 F. App'x 403, 407 (6th Cir. 2014), the Court finds that Taulbee sufficiently pleaded that he was qualified for the position and that he requested an accommodation that BCSD denied.

Regarding his qualifications, absent PTSD-related outbursts at work, Taulbee performed without reprimand or incident. *See* DE 1-1 ¶¶ 15-73. Taulbee specifically states in his claims that

---

[8] BCSD challenges Taulbee's pleading of disability on all three prongs of the KRS § 344.010 disability definition. However, since Taulbee adequately passed the gating, the Court ventures no farther.

he "was qualified for and capable of performing his job." *Id.* ¶ 77. "[T]his is enough" to survive a motion to dismiss. *Pappas v. District of Columbia*, 513 F. Supp. 3d 64, 94-95 (D.D.C. 2021) (finding the plaintiffs properly alleged they were qualified for their positions when their complaint only alleged their qualifications in their claims for relief). Taulbee held his position as a sheriff's deputy for roughly four years, further suggesting he was qualified. *Cf. Orozco v. City of Murfreesboro*, No. CIV.A. 3:09-CV-00752, 2009 WL 4042586, at *3 (M.D. Tenn. Nov. 19, 2009) (finding that a plaintiff satisfies the qualifications prong by alleging that he worked for his defendant employer for seven years). Further, per the Complaint, when Taulbee first quit work, Sheriff Williams unilaterally sought Taulbee out to request his return. *See* DE 1-1 ¶ 48. This plausibly supports qualification. Thus, at the motion to dismiss stage, the pleadings raise a reasonable inference that Taulbee was qualified as a deputy sheriff.

Regarding the accommodation, Taulbee must have provided BCSD with a sufficient basis to understand that he requested an accommodation because of his disability. *See Stanciel v. Donahoe*, 570 F. App'x 578, 583 (6th Cir. 2014). An employer has notice of an employee's disability if that employee tells the employer he is disabled. *See Yarberry v. Gregg Appliances, Inc.*, 625 F. App'x 729, 737 (6th Cir. 2015). Also, a "request for accommodation can be inferred by context." *Aldini v. Kroger Co. of Michigan*, 628 F. App'x 347, 350-51 (6th Cir. 2015). And medical leaves of absence have been deemed reasonable accommodations. *See Cehrs v. Northeast Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 782-83 (6th Cir. 1998). Of course, such things as a modified work schedule fit, per the text of the KCRA. *See* KRS § 344.030(6)(a).

Here, the Complaint alleges that Taulbee discussed symptoms of his PTSD with Sheriff Williams and Chief Deputy Lambdin after he was reprimanded for outbursts at BCSD. *See* DE 1-1 ¶¶ 34-35. Chief Deputy Lambdin then recommended that Taulbee seek medical help "about the

issues." *See id.* ¶ 36. Taulbee also alleges that later, immediately following a firefight, he requested time off from Sheriff Williams, who knew at the time that Taulbee "was traveling to the VA for treatment." *See id.* ¶¶ 55-60. However, Sheriff Williams denied Taulbee's request. *See id.* ¶ 61. These facts plausibly state that Taulbee advanced a reasonable accommodation request—a leave of absence—that BCSD denied. Thus, Taulbee's Complaint plausibly demonstrates a claim for relief, providing BCSD sufficient notice of the adequate facts on which his claim rests.

### 2. <u>Disability Discrimination – Constructive Discharge</u>

Taulbee also alleges that BCSD engaged in disparate treatment by constructively discharging him based on his disability. Taulbee's disparate treatment claim has three elements: (1) Taulbee was disabled, (2) Taulbee was qualified to perform his job requirements, with or without reasonable accommodation, and (3) Taulbee suffered an adverse employment decision because of his disability. *See Hallahan v. Courier-Journal*, 138 S.W.3d 699, 706-07 (Ky. App. 2004); *see also Bogart v. Univ. of Kentucky*, 766 F. App'x 291, 292 (6th Cir. 2019). Constructive discharge is considered an adverse employment decision under the KCRA. *See Brooks v. Lexington-Fayette Urban Cty. Hous. Auth.*, 132 S.W.3d 790, 807 (Ky. 2004). To prove constructive discharge, Taulbee must demonstrate the "conditions created by [BCSD]'s actions [we]re so intolerable that a reasonable person would feel compelled to resign." *Id.* (quoting *Northeast Health, Management, Inc. v. Cotton*, 56 S.W.3d 440, 445 (2001).

On this claim, BCSD argues Taulbee's Complaint provides "no legally sufficient details." DE 3 at 7. However, since Taulbee correctly supports each element with factual details plausibly presenting a claim for relief, Taulbee's constructive discharge claim survives BCSD's motion to dismiss. Taulbee plausibly alleges knowledge of disability and the accommodation request. He

10

also alleges a series of negative institutional responses to him, or changes affecting him,[9] that could culminate in a constructive discharge characterization.

As discussed above, Taulbee pleaded sufficient facts plausibly supporting his disability and qualifications. As to the third element of Taulbee's disparate treatment claim, the facts in the Complaint also plausibly demonstrate that Taulbee suffered an adverse employment decision—namely, constructive discharge.

Courts in the Sixth Circuit consider multiple factors—alone or in combination—to determine whether an employee would have felt compelled to resign, including:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work, (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status.

*Russell v. CSK Auto. Corp.*, 739 F. App'x 785, 794 (6th Cir. 2018) (quoting *Logan v. Denny's*, 259 F.3d 558, 569 (6th Cir. 2001)).

Here, Taulbee's Complaint alleges facts supporting multiple factors. Taulbee alleges that after he experienced aggravated PTSD symptoms and was denied leave, Sergeant Jordan no longer assigned work to Taulbee directly but, atypically, instead had other deputies assign work. *See id.* ¶ 69. This could be construed as a demotion or else as humiliation calculated to encourage resignation—particularly after Sheriff Williams earlier "sent a message to the [BCSD text messaging] group mocking and ridiculing [him]." *Id.* ¶ 46. The alleged conduct placed Taulbee below his peers despite their identical title. Further, Taulbee "was also assigned to driving prisoner transports, a task normally assigned

---

[9] Schedule changes, duty reassignments, actions during leave, e.g.

to the least senior deputy, which was not [Taulbee]." *Id.* ¶ 70. Taulbee therefore—on plausible inferences—suffered, in effect, a demotion to perform the work of the least-senior deputy sheriff or was reassigned to menial or degrading work. Finally, when Taulbee eventually took leave, Sergeant Jordan rummaged through his locker, disorganizing paperwork, and dropping files in his wake. *See id.* ¶ 71. This could constitute harassment or humiliation designed to encourage resignation by making even the logistical, tedious tasks more difficult.

These facts—taken as true and construed in the light most favorable to Taulbee, along with the PTSD history and interactions regarding Taulbee's issues—plausibly present constructive discharge. Taulbee's constructive discharge claim survives BCSD's motion to dismiss.

### *(b) FMLA Interference (Count II)*

In addition to alleging disability discrimination, Taulbee pleads that BCSD interfered with his entitlement to take FMLA leave. *See id.* ¶¶ 83-90. Eventually, Taulbee must prove five elements to succeed on his FMLA interference claim: (1) he was an eligible employee, (2) BCSD was an employer as defined under the FMLA, (3) Taulbee was entitled to leave under the FMLA, (4) Taulbee gave BCSD notice of his intent to take leave, and (5) BCSD denied his request. *See Edgar v. JAC Products, Inc.*, 443 F.3d 501, 507 (6th Cir. 2006). Here, at the motion to dismiss stage, Taulbee has sufficiently pleaded facts plausibly supporting the FMLA interference claim.

BCSD claims Taulbee has not sufficiently alleged the middle three elements of an FMLA interference claim, warranting dismissal. *See* DE 3 at 8. However, at the pleading stage, Taulbee need only plead factual content that allows the Court to reasonably infer, based on its judicial

experience and common sense, that BCSD interfered with Taulbee's FMLA rights. *See Iqbal*, 129 S. Ct. at 1950. Taulbee's Complaint easily surmounts that burden as to all elements.

First, regarding BCSD's status as Taulbee's employer, Taulbee pleaded that BCSD "was at all relevant times an 'employer' under the [FMLA]." *See* DE 1-1 ¶ 85. This sufficiently supports and places BCSD on notice of Taulbee's alleged claim.[10] *Cf. Matthews v. ALC Partner, Inc.*, No. 2:08-cv-10636, 2008 WL 5188760, at *3 (E.D. Mich. Dec. 9, 2008). The Court finds this allegation, which is a legal term imbued with factual freight, adequate, as a pleading matter. This is particularly so given the breadth of the employer definition in the public sector context. *See* 29 C.F.R. § 825.108(c)(1).

Regarding Taulbee's entitlement to take FMLA leave, the Court similarly finds that Taulbee meets his burden. PTSD can be considered a serious health condition, qualifying a plaintiff for FMLA leave. *See Lee v. City of Elkhart, Ind.*, 602 F. App'x 335, 339 (7th Cir. 2015); *see also Carlson v. Sexton Ford Sales, Inc.*, No. 4:15-cv-04227-SLD-JEH, 2017 WL 4273618, at *4 (C.D. Ill. Sep. 26, 2017) (finding that PTSD meets the definition of a serious health condition qualifying an employee for FMLA leave). Here, Taulbee pleaded specific factual allegations detailing a PTSD diagnosis (and perhaps more than one, plus other mental health conditions) and how PTSD interfered with his daily activities and chronicling major steps in treatment from his

---

[10] The Court in *Grizzell* found such allegations concerning the plaintiff's qualifications sufficient at the pleading stage. *See Grizzell v. Cyber City Teleservices Mktg., Inc.*, No. 3:09-cv-1141, 2010 WL 2622933, at *5-*7 (M.D. Tenn. June 25, 2010); *see also Porter v. Five Star Quality Care-MI, LLC*, 26 F. Supp. 3d 694, 709 (E.D. Mich. 2014) (finding that the plaintiff's failure to plead the "causal connection" element in an FMLA retaliation claim did not require dismissal under Civil Rule 12(b)(6) based on *Swierkiewicz*).

civilian doctor and the VA medical center. *See* DE 1-1 ¶¶ 25-30, 52-54, 65-68. Taulbee plausibly demonstrated that he had a condition that qualified him as eligible for FMLA leave.

Finally, Taulbee sufficiently pleaded the notice requirement. The Sixth Circuit has clarified: "The employee's burden is not heavy. 'An employee gives his employer sufficient notice that he is requesting leave for an FMLA-qualifying condition when he gives the employer enough information for the employer to reasonably conclude that an event described in the FMLA has occurred." *Wallace v. FedEx Corp.*, 764 F.3d 571, 586 (6th Cir. 2014) (quoting *Calvin v. Honda Am. Mfg., inc.*, 465 F.3d 713, 723-24 (6th Cir. 2003)). Here, Taulbee pleaded that, upon suffering a PTSD-triggering firefight during work, Taulbee requested leave from Sheriff Williams—a request that Sheriff Williams subsequently denied. *See* DE 1-1 ¶¶ 55-63. What Williams knew or thought will emerge in discovery. The allegations involve Williams knowing of Taulbee's prior issues and a direct conversation about PTSD where the Sheriff and Chief Deputy recommended medical treatment and discussed medication. These facts, buttressed by inferences that are reasonable, satisfy the plausibility pleading standard.

BCSD makes a series of broadsides against the Complaint.[11] The Court determines that, properly analyzed, the claims of Taulbee should proceed through discovery. As such, the Court **DENIES** DE 3. However, the Court gives Plaintiff fourteen days and recommends that Plaintiff

---

[11] The Court does not march through the many arguments made without citation or support, *e.g.*, that there was a pleading requirement of cited written documentation or, curiously, that the law requires a showing that the employer's "actions affected or limited major life activities." DE 3, at 5. Some forays are below address.

promptly seek to amend to name the proper governmental entity, which, based on DE 13, appears to be the county rather than the department.

### IV. Conclusion

The Court **DENIES** DE 3.

This the 3rd day of February, 2022.

Signed By:

_Robert E. Wier_

**United States District Judge**